Case 4:15-cv-00095-A Document 72 Filed 11/16/16 Page 1 of 15 PageID 887

NORTHERN DISTRICT OF TEXAS
FILED
NOV 16 2016
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARY DEAL, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF JAKOB LANGE, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 4:15-CV-095-A |
| CITY OF FORT WORTH, TEXAS, | § § § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, City of Fort Worth, Texas, ("City") for summary judgment. The court, having considered the motion, the response of plaintiff, Mary Deal, the summary judgment evidence, the record, and applicable authorities, finds that the motion should be granted in part as set forth herein and that plaintiff's state law tort claim should be dismissed without prejudice.

I.

Plaintiff's Claims

The operative pleading is plaintiff's first amended complaint filed June 29, 2016. In it, plaintiff alleges as follows:

In the early morning hours of February 7, 2013, her son, Jakob Lange ("Jakob"), left a club in the vicinity of Texas Christian University where he had performed. Two Fort Worth

Police officers observed Jakob driving at an excessive speed. One officer initiated pursuit with the other following. Jakob made a prohibited left turn and officers turned on their lights and sirens and pursued him for several minutes. Upon entering the intersection of Overton Park Drive East and Bellaire Drive South, Jakob's vehicle appeared to strike an object and he lost control. Unable to negotiate a curve, he struck a tree and suffered severe injuries to which he succumbed the following day. Damage to the right front tire of Jakob's car was consistent with the use of a tire deflation device. Such device was deployed when Jakob was traveling at approximately 60 miles per hour heading into a curve in the road. City had a policy only to deploy such devices in chases over 35 miles per hour, contrary to recommendations of the manufacturer, experts in the field, and policies among other police departments. And, there was no designated supervisor making decisions as to the pursuit of Jakob, contrary to City policy. "The crash and death of Jakob [] was a 'highly predictable' consequence of the failure to supervise and that failure to supervise represented the 'moving force' behind the deployment of the tire deflation device in a manner that violated [Jakob's] constitutional rights." Doc.[1] 46 at 5, ¶ 18.

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

Plaintiff asserts causes of action under 42 U.S.C. § 1983 and under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §§ 101.001-.109.

II.

Grounds of the Motion

City urges two grounds in support of its motion. First, City did not violate the constitutional rights of Jakob. And, second, plaintiff's state law tort claim is barred by sovereign immunity.

III.

Applicable Legal Principles

A.  Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a

---

[2] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
(continued...)

4

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

B. <u>Municipal Liability Under § 1983</u>

The law is clearly established that the doctrine of respondent superior does not apply to § 1983 actions. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). Liability may be imposed against a municipality only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Monell, 436 U.S. at 691. Specifically, there must be an affirmative link between the policy and the particular constitutional violation alleged. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

---

²(...continued)
explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a municipal policymaker. Tuttle, 471 U.S. at 823-24. (If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the requisite fault and the causal connection between the policy and the constitutional deprivation. Id. at 824.) Thus, to establish municipal liability requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common

6

> and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

The general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992); McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989); Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

C. Excessive Force

The elements of an excessive force claim are (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007). A use of deadly force is presumptively reasonable when an officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others. Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003). In the context of police pursuits, an officer's attempt to terminate a dangerous high speed car chase that threatens the lives of pedestrians who might have been present, other motorists, or the officers involved in the chase

7

does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death. Scott v. Harris, 550 U.S. 372, 386 (2007). There is no constitutional requirement that police have to let a reckless driver get away. Id. at 385.

The reasonableness of use of force is to be determined from the perspective of the officer on the scene and not with "the 20-20 vision of hindsight." Mace, 333 F.3d at 625 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). That the officer himself may have created the situation does not change the analysis. In other words, that the officer could have handled the situation better is not a factor in the constitutional analysis. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985). See also City & Cty. Of San Francisco v. Sheehan, 135 S. Ct. 1765, 1777 (2015)(failure to follow training does not itself negate entitlement to qualified immunity). And, if there is no underlying constitutional violation by the officer, i.e., no excessive force, then the City cannot be held liable. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

D. Texas Tort Claims Act

Under the Texas doctrine of sovereign immunity, a governmental entity cannot be held liable for the actions of its employees unless a constitutional or statutory provision waives

8

its sovereign immunity in clear and unambiguous language. See Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex.1994); Duhart v. State, 610 S.W.2d 740, 742 (Tex.1980). The Texas Tort Claims Act provides such a waiver in certain circumstances. Tex. Civ. Prac. & Rem. Code § 101.025; York, 871 S.W.2d at 177. However, the Act does not waive immunity with respect to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057(2); see Goodman v. Harris County, 571 F.3d 388, 394 (5th Cir. 2009). Use of excessive force is an intentional tort and an alternative negligence pleading cannot save the claim where the claim is based on the same conduct as the intentional tort claim. Saenz v. City of El Paso, 637 F. App'x 828, 830-31 (5th Cir. 2016); Cox v. City of Fort Worth, 762 F. Supp. 2d 926, 935 (N.D. Tex. 2010).

IV.

Analysis

A.  Section 1983 Claim

City first contends that plaintiff cannot demonstrate that City had a policy, practice, or custom that caused a deprivation of Jakob's constitutional rights. City had a written policy addressing police pursuits. Doc. 58 at CFW 0004-0009. Officers were required to have a working knowledge of the policy and all

9

applicable laws and procedures and to comply with them. Id. at CFW 0002-0003. Officers were trained in the application of the pursuit policy. Id.

With regard to the deployment of tire deflation devices, the City's policy provides:

1. No officer shall deploy or attempt to deploy tire deflation devices (TDD) unless they have completed department training on their use. Officers shall not deviate from departmental guidelines and training methods.
2. The safety of all officers, citizens and violators shall be of the utmost concern before and during the use of the tire deflation devices. If feasible, prior to deployment of TDD, officers shall notify pursuing units of TDD deployment location.
3. Officers shall adhere to the following requirements when feasible. Tire deflation devices shall:
   a. Be deployed on paved (concrete or asphalt) surfaces;
   b. Not be used on vehicles traveling less than 35 mph; and
   c. Not be thrown from a moving vehicle.
4. Tire deflation devices shall not be deployed on the following types of vehicles:
   a. Vehicles with less than four wheels;
   b. Vehicles transporting hazardous materials;
   c. Passenger buses containing passengers; or
   d. Any off-road recreational vehicles.
5. Officers shall consider visibility of pursuit, traffic and pedestrian congestion and weather and road conditions prior to deployment of TDD.

Doc. 58 at CFW 0007-0008.

Plaintiff contends that City's "policy of deploying spike sticks in high-speed pursuits, against the recommendations of the manufacturer of the spike sticks and contrary to policies of

police departments in general, was in conscious indifference to the rights and safety of Jakob Lange." Doc. 70 at 7. However, the policy does not address use of tire deflation devices "in high-speed pursuits." It only says that they shall not be deployed on vehicles traveling less than 35 mph. Doc. 58 at CFW 0007. Plaintiff has not come forward with any summary judgment evidence to establish that the policy itself is unconstitutional, demonstrating deliberate indifference to Jakob's rights. She alleges that failure to change the policy demonstrated deliberate indifference, Doc. 70 at 12, but she has not shown more than this one isolated incidence regarding use of a tire deflation device.[3] The case she relies on, Mullenix v. Luna, 136 S. Ct. 305 (2015), refers to a "high-speed" chase as involving speeds of 85-110 miles per hour and even there, the court could not say that only someone plainly incompetent or knowingly violating the law would have acted as the pursuing officer did. Plaintiff notes that the officers attempted no alternative means of ending the pursuit, but alternative means is not the question. Thompson v. Mercer, 762 F.3d 433, 440 (5th Cir. 2014). So long as a reasonable officer could have believed his conduct was justified, plaintiff cannot avoid summary judgment by simply producind an expert's

---

[3]The court notes that for purposes of its summary judgment motion, City does not dispute that a tire deflation device was used.

report that the officer's conduct leading up to the deadly incident was imprudent, inappropriate, or reckless. City & Cty. Of San Francisco, 135 S. Ct. at 1777. Ultimately, it was Jakob who intentionally placed himself and others in danger by unlawfully engaging in the reckless flight that led to his unfortunate death. Thompson, 762 F.3d at 440.

Plaintiff addresses an alleged failure of City to train its officers in the use of tire deflation devices, Doc. 70 at 15-16, but that is not the basis for any claim asserted in her amended complaint. Even if it was, failure to train can only give rise to liability in extremely limited circumstances. Connick, 563 U.S. at 61 (citing Tuttle, 471 U.S. at 822-23). Failure to train must amount to deliberate indifference. Id. And, a pattern of similar constitutional violations by untrained employees is ordinarily necessary to establish deliberate indifference for purposes of failure to train. Id. at 62. No such allegation is made here; nor is any evidence in support proffered. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

Finally, with regard to her § 1983 claim, plaintiff says that the officers involved in the pursuit were inadequately

12

supervised, citing a provision of the City's pursuit policy that officers "not continue a pursuit without authorization from a supervisor over the police radio system." Doc. 58 at CFW 0005, ¶305.03.C.4. However, plaintiff has not established a lack of supervision, only that a supervisor did not make any statements over the radio during the pursuit. Doc. 70 at 17 (quoting testimony of the pursuing officer). To the contrary, the testimony is that the supervisor is "getting the facts as they are coming in as I'm calling out and they're making the determination." Id. Even if lack of supervision could be established, plaintiff can offer only speculation as to what might have happened. When viewed from the perspective of the officers on the scene[4], the actions they took were reasonable and it cannot be said that no other officer would have done the same.

B.  State Law Claim

With regard to the state law tort claim, as recited, supra, sovereign immunity is not waived for intentional torts. Tex. Civ. Prac. & Rem. Code §101.057(2). Plaintiff is unequivocally contending that City "utilized excessive force . . . in conscious indifference." Doc. 70 at 7. There is authority that this is the kind of tort for which immunity is not waived. Saenz, 637 F.

---

[4] As the Supreme Court has noted, objective reasonableness can best be determined in light of the dashcam video of the pursuit vehicle. Scott v. Harris, 550 U.S. 372, 384 (2007).

App'x at 830-31; City of San Antonio v. Dunn, 796 S.W.2d 258, 261 (Tex. App.-San Antonio 1990, writ denied). The court is not persuaded that cases such as Reed Tool Co. v. Copelin, 689 S.W.2d 404, 406 (Tex. 1985), discussing Texas workers' compensation, have any bearing on waiver of sovereign immunity.

Nevertheless, because the state of the law in Texas appears to be unsettled, Doc. 70 at 22-23 (discussing cases), the court has determined that the best course would be to dismiss plaintiff's state law tort claim without prejudice. Now that the court has determined that judgment should be granted as to the § 1983 claim, the court is declining to exercise jurisdiction over the remaining state law claim.[5] 28 U.S.C. § 1367.

V.

Order

The court ORDERS that City's motion for summary judgment be, and is hereby, granted in part; that plaintiff take nothing on her claim against City pursuant to § 1983; and that such claim be, and is hereby, dismissed with prejudice.

The court further ORDERS, ADJUDGES, and DECREES that plaintiff's claim under the Texas Tort Claims Act be, and is

---

[5]The taking of this action should not adversely affect plaintiff's ability to pursue this claim. 28 U.S.C. § 1367(d).

hereby, dismissed without prejudice.

    SIGNED November 16, 2016.

                                          JOHN McBRYDE
                                          United States District Judge